```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

|                                              |   |          |
|----------------------------------------------|---|----------|
| BASF AGRO B.V., ARNHEM (NL), WADENSWIL BRANCH, et al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:10CV276 |
| MAKHTESHIM AGAN OF NORTH AMERICA, INC. (MANA) et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

    Presently before the court is Plaintiffs' Motion for a Temporary Restraining Order (Doc. 78). For the reasons that follow, this court grants that motion by order entered April 4, 2011, and recited here. This court recognizes that the record in this case is not yet fully developed. Any findings or conclusions in this Memorandum Opinion are based upon the limited record as relates to Plaintiffs' motion for a temporary restraining order ("TRO") and are made for the limited purpose of deciding that motion. These findings and conclusions are made without prejudice to future presentations of evidence or arguments by the parties.

    This matter is before this court for review of the Report and Recommendation ("Report") filed on March 22, 2011, by the

1

Magistrate Judge in accordance with 28 U.S.C. § 636(b).  In the Report, the Magistrate Judge recommends that Plaintiffs' motion for a TRO be granted.  (See Doc. 101 at 2.)  Defendants filed timely objections (Doc. 108) to the Report, and Plaintiffs filed a response (Doc. 109).

This court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. . . . or recommit the matter to the magistrate judge with instructions."  Id.

This court has appropriately reviewed the portions of the Report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's Report.  This court therefore adopts the Report as modified herein.

I. **LEGAL STANDARD**

"A plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  See Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008) (citations omitted); see also, e.g., Martinez v.

RegisterFly, Inc., No. 1:07CV00188, 2007 WL 1028516, at *1 (M.D.N.C. Mar. 21, 2007) (applying the preliminary injunction standard to a motion for a TRO). "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S. Ct. at 375-76 (citation omitted).

## II. ANALYSIS

As an initial matter, this court concludes that it has jurisdiction to decide Plaintiffs' motion for a TRO at this time. It is undisputed that, as of the filing of the complaint in this case, Defendants had not yet engaged in activities that potentially infringe United States Patent Nos. 6,414,010 ("the '010 patent") and 6,835,743 ("the '743 patent"). However, Plaintiffs assert, and this court agrees, that jurisdiction is proper because Defendants have "taken concrete steps" and "made meaningful preparation . . . with intent to engage in potentially infringing activities" by, inter alia, obtaining fipronil technical material and securing EPA approval of a master label[1] for a fipronil-related product. See Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1378 (Fed. Cir. 2004) (internal quotation marks omitted).

---

[1] "The [master] label of a termiticide provides important use instructions that pest management professionals ("PMPs") must follow in order to comply with federal . . . regulations." (Potter Decl. (Doc. 95-4) ¶ 28.)

3

**A. Plaintiffs are likely to succeed on the merits**

In order to satisfy the first prong of the test for preliminary relief, Plaintiffs must show that they will likely prove that Defendants will infringe at least one valid and enforceable patent claim. Abbott Labs. v. Andrx Pharm., Inc., 473 F.3d 1196, 1201 (Fed. Cir. 2007) (citation omitted).

By statute, the '010 patent and the '743 patent are both presumptively valid, as are all claims of those patents, and the burden of establishing invalidity rests with Defendants. See 35 U.S.C. § 282. Defendants have raised issues as to the validity of Plaintiffs' patents and claims, but in light of the statutory presumption and the limited record that is available at this preliminary stage of the litigation, this court finds that Defendants have not "establish[ed] a substantial question of invalidity or unenforceability, i.e., that [Defendants are] likely to succeed in proving invalidity or unenforceability of the asserted patents."[2] See Andrx Pharm., Inc., 473 F.3d at 1201 (citations omitted). This court therefore concludes that Plaintiffs have sufficiently demonstrated, for purposes of obtaining a TRO, that their patents and claims are valid.

This court also concludes that Plaintiffs have made the

---

[2] Although the parties have briefed the Markman hearing issues, no hearing has been held. Furthermore, Defendants reference obviousness and other matters related to patent validity that have not been fully briefed.

4

necessary showing that they will likely prove that Defendants will infringe Plaintiffs' patents. Plaintiffs have presented evidence that the methods protected by the '010 patent and the '743 patent are embodied by the Exterior Perimeter/Localized Interior treatment method that is described in the master label for Plaintiffs' Termidor SC product. (See Davis Decl. (Doc. 10-3) ¶ 18; Potter Decl. (Doc. 95-4) ¶ 43.) Further, Plaintiffs have presented evidence that Defendants purposely conformed the master label for their fipronil-related product as closely as possible to the master label for Plaintiffs' Termidor SC product, such that there are no substantive differences between the treatment methods described in the two labels. (Potter Decl. (Doc. 95-4) ¶ 58.) Plaintiffs have also produced declarations from expert witnesses stating their opinions that the master label for Defendants' fipronil-related product will induce infringement of Plaintiffs' patents. (See Davis Decl. (Doc. 10-3) ¶ 31; Potter Decl. (Doc. 95-4) ¶ 31.) Based on this forecast of evidence, this court concludes that Plaintiffs have sufficiently demonstrated for present purposes that Defendants' master label will induce infringement of the '010 patent and the '743 patent.

**B. Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief**

"Irreparable harm is presumed when a clear showing of patent

validity and infringement has been made." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citations omitted). Plaintiffs have made the requisite showing of patent validity and infringement, and Defendants have to this point offered very little evidence to rebut the presumption of irreparable harm. This court therefore concludes that Plaintiffs have adequately demonstrated that they are likely to suffer irreparable harm in the absence of preliminary relief.

**C. The balance of equities tips in Plaintiffs' favor**

This court finds that, in the absence of preliminary relief, Plaintiffs stand to "lose the value of [their] patent[s]," whereas entry of a TRO would merely deprive Defendants of "the ability to go on to the market and begin earning profits earlier." See Glaxo Grp. Ltd. v. Apotex, Inc., 64 F. App'x 751, 756 (Fed. Cir. 2003). This court also notes that Defendants' potential loss of profit will be "secured by the issuance of [a] bond if the ultimate ruling is non-infringement or patent invalidity." See id. For these reasons, this court concludes that, for TRO purposes, the balance of equities weighs in Plaintiffs' favor.

**D. A TRO is in the public interest**

The public interest weighs against "shifting market benefits to the infringer while litigation is pending for patents that are likely to withstand the attack" and thereby eroding "the

incentive for discovery and development of new products." See Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1362 (Fed. Cir. 2008). In short, "the public is best served by enforcing patents that are likely valid and infringed." Abbott Labs. v. Andrx Pharm., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006). Because Plaintiffs have adequately demonstrated that their patents are likely to be valid and that Defendants are likely to infringe those patents, this court concludes that a TRO preventing such infringement is in the public interest.

### III. AMOUNT OF SECURITY

Federal Rule of Civil Procedure 65(c) provides: "The court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This court has considered the parties' arguments concerning the proper amount of security (Docs. 117, 120) and finds that a bond in the amount of $1 million (one million dollars) is sufficient to pay Defendants' costs and damages in the event Defendants are found to have been wrongfully restrained.

In support of this determination, this court notes that Defendants have not yet successfully registered their Taurus SC product with EPA and that Defendants' sales projection assumes that EPA will approve Defendants' pending registration

application. This court observes further that Defendants have not provided any documentation in support of their estimated sales. This court also notes that Defendants' requested bond amount represents Defendants' sales projection for all of 2011, rather than a sales projection based on a reasonable estimate of how long this court's TRO will remain in effect. Even if this court accepts, arguendo, Defendants' assertion that the bulk of termiticide sales takes place between April and June, this court nonetheless finds that it would be excessive at this stage to require Plaintiffs to secure Defendants' projected sales for all of 2011. A motion for a preliminary injunction remains pending before this court, and in the event that motion is granted, this court will revisit the issue of the proper amount of security.

## IV. CONCLUSION

For the foregoing reasons, this court concludes that Plaintiffs' Motion for a Temporary Restraining Order (Doc. 78) should be granted.

**IT IS THEREFORE ORDERED** that Defendants, their officers, agents, servants, employees, attorneys, affiliates, and those persons in active concert or participation with Defendants are enjoined from using, importing, marketing, offering to sell, or selling in or to the United States, or inducing others to use, the accused products in this litigation and any other fipronil-related product in any manner that infringes the '010 or '743

patents or induces infringement thereof.  This Temporary Restraining Order shall remain in force until further order of this court.

**IT IS FURTHER ORDERED** that Plaintiffs shall post a bond in the amount of $1 million (one million dollars).  If Plaintiffs have not posted such a bond by 5:00 p.m. on April 15, 2011, the Temporary Restraining Order recited herein shall automatically dissolve except upon further order of this court.

This the 13th day of April 2011.

_William L. Osteen, Jr._
United States District Judge