IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|                                      |   |          |
|--------------------------------------|---|----------|
| BASF AGRO B.V., ARNHEM (NL), WADENSWIL BRANCH, BAYER S.A.S. | ) ) ) |          |
| Plaintiffs,                          | ) ) |          |
| v.                                   | ) ) | 1:10CV276 |
| MAKHTESHIM AGAN OF NORTH AMERICA, INC. (MANA), CONTROL SOLUTIONS, INC. | ) ) ) ) |          |
| Defendants.                          | ) |          |

MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

Presently before the court is Defendants' Modified Motion for Summary Judgment Based on Non-Infringement (Doc. 188). Defendants Makhteshim Agan of North America, Inc. ("MANA") and Control Solutions, Inc. ("CSI") have filed a brief in support of the motion (Doc. 189). Plaintiffs BASF Agro B.V., Arnhem (NL), Wädenswil Branch ("BASF") and Bayer S.A.S. ("Bayer") have filed a response in opposition (Doc. 195), and Defendants have filed a reply (Doc. 211). Further, this court held a hearing regarding the motion on October 20, 2011. Defendants' modified motion for summary judgment is now ripe for adjudication, and for the reasons set forth herein, this court will grant the motion.

## I. BACKGROUND

Plaintiffs BASF and Bayer brought this patent infringement action, alleging that Defendants MANA and CSI will infringe United States Patent Nos. 6,414,010 ("the '010 patent") and 6,835,743 ("the '743 patent"), in violation of 35 U.S.C. § 271.

Inventor Yasuo Kimura ("Mr. Kimura") acquired the '010 patent in 2002 and the '743 patent in 2004. Both patents are entitled "Pesticidal Pyrazoles and Derivatives," and both teach a method of using certain insecticidal compounds in order to protect a building or future building against damage caused by insects.[1] Bayer is the assignee and owner of both the '010 patent and the '743 patent (collectively, "the Kimura patents"), and BASF is the exclusive licensee of the Kimura patents in the United States with respect to the insecticidal compound Fipronil. (See Compl. (Doc. 1) ¶¶ 13, 15.)

Plaintiffs assert that Defendants will infringe claims 1, 2, 6, 8, 9, 10, 18, 19, 21, and 23 of the '010 patent and claims 1, 2, 5, 6, 7, and 14 of the '743 patent. (Joint Pre-Hr'g Statement (Doc. 133) at 2.)[2] This court has already construed the disputed

---

[1] It is undisputed that the '743 patent is a divisional patent with the same priority date and specification as the '010 patent. (See Markman Hr'g Tr. (Doc. 148) at 10-11.)

[2] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

terms of the Kimura patents in an order entered on June 30, 2011 ("<u>Markman</u> Order") (Doc. 183).

## II. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56. The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Id.</u> at 255. A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be

3

genuine. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**III. ANALYSIS**

In support of their motion for summary judgment, Defendants argue, inter alia, that the accused label for Defendants' Taurus SC product instructs users to apply that product in a manner that was disclaimed during prosecution of the Kimura patents. (Defs.' Br. Supp. Modified Mot. Summ. J. (Doc. 189) at 15.) Because Mr. Kimura disclaimed that application method, Defendants contend, the Taurus SC label does not infringe, or induce infringement of, the Kimura patents. (Id. at 15-16.)

Plaintiffs argue that Defendants' Taurus SC label instructs users to practice the Kimura patents' invention and merely adds prior art to that invention. (Pls.' Br. Opp'n Defs.' Modified Mot. Summ. J. (Doc. 195) at 10-11.) Plaintiffs argument is premised upon their brief that the claims of the Kimura patents are open-ended "comprising" claims and that "the addition of elements or steps to [such a] claim is still an infringement." (Id. at 11.)

4

Each of the asserted claims of the Kimura patents contains in its preamble, or depends from a claim whose preamble contains, the phrase "comprising the steps of." (See Compl. Ex. B (Doc. 1-3) at 5, col. 5, l. 52; id. at 6, col. 7, ll. 45-46; Compl. Ex. C (Doc. 1-4) at 5, col. 5, l. 55.)

> When a patent claim uses the word "comprising" as its transitional phrase, the use of "comprising" creates a presumption that the body of the claim is open. In the parlance of patent law, the transition "comprising" creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.

Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc., 246 F.3d 1336, 1348 (Fed. Cir. 2001); see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1347 (Fed. Cir. 2005) ("The addition of unclaimed elements does not typically defeat infringement when a patent uses an open transitional phrase such as 'comprising.'"); Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1371 (Fed. Cir. 2005) ("The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended."). The Kimura patents' use of the word "comprising" thus creates a presumption that the patents' claims do not exclude unrecited elements and that infringement cannot be avoided through the simple addition of unclaimed elements.

However, a patentee can rebut the presumption stemming from use of the word "comprising" by clearly disavowing certain

5

unrecited elements and thereby actively excluding those elements from the scope of the patent's claims.  See Free Motion Fitness, Inc., 423 F.3d at 1353 ("The presence of an undesirable prior art feature in addition to the elements recited in the claim . . . does not limit the claim unless there is a clear and unmistakable disclaimer of claim scope." (emphasis added)).  When a patentee clearly disclaims particular elements, an accused device or method that adds those very disclaimed elements to the patented invention will be deemed noninfringing.  N. Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1296-97 (Fed. Cir. 2000) ("[I]f a patent requires A, and the accused device or process uses A and B, infringement will be avoided only if the patent's definition of A excludes the possibility of B."); RFID Tracker, Ltd. v. Wal-Mart Stores, Inc., 342 F. App'x 628, 630-32 (Fed. Cir. 2009) (per curiam) (affirming summary judgment of noninfringement based on a finding that the patentee's disavowal of claim scope rebutted the presumption arising from use of an open-ended term).

In its Markman Order, this court has already found that Mr. Kimura made "an express, intrinsic disclaimer of subject matter" when he stated in the Kimura patents' specifications that "'[a]nother object of the instant invention is to provide a termite treatment without barrier.'"  (Doc. 183 at 14 (quoting Compl. Ex. B (Doc. 1-3) at 3, col. 1, ll. 43-44).)  More

6

specifically, after examining what Mr. Kimura meant by "without barrier," this court found that Mr. Kimura "disclaimed applying insecticide without loopholes around a building, under a building, and both around and under a building." (Id. at 19-20.) This court also noted that Mr. Kimura's disclaimer of barrier treatments affects all the asserted claims of the Kimura patents. (Id. at 26 n.10.) Thus, even assuming arguendo that Defendants' Taurus SC label instructs users to practice the invention that is claimed in the Kimura patents, this court must find the Taurus SC label to be noninfringing if that label also instructs users to apply the product without loopholes around a building, under a building, or both around and under a building. See Free Motion Fitness, Inc., 423 F.3d at 1353; N. Telecom Ltd., 215 F.3d at 1296-97; RFID Tracker, Ltd., 342 F. App'x at 630-32.

There is no dispute that Defendants' Taurus SC label instructs users, at least in part, to apply the product in a manner that falls within the disclaimer that this court found in its Markman Order. The "General Information" portion of the label states: "This product must be applied in manner [sic] which provides a continuous treated zone to effectively prevent termites from infesting wood." (Defs.' Br. Supp. Modified Mot. Summ. J. Ex. I (Doc. 189-9) at 4 (emphases added).) Further, the "Exterior Perimeter/Localized Interior" ("EP/LI") portion of the label, which is the particular portion that Plaintiffs contend

7

infringes the Kimura patents, (e.g., Pls.' Br. Opp'n Defs.' Modified Mot. Summ. J. (Doc. 195) at 12-14), calls for "the establishment of <u>a continuous treated zone</u> along the exterior of the foundation" and states that "[t]o prevent termite infestation of a structure, exterior perimeter applications of Taurus SC <u>must</u> be made in a manner which will create <u>a continuous treated zone</u>." (Defs.' Br. Supp. Modified Mot. Summ. J. Ex. I (Doc. 189-9) at 10 (emphases added).)  The Taurus SC label thus directs users to apply the product without loopholes around a building, a method that Mr. Kimura specifically disclaimed.  Indeed, although Plaintiffs disagree with this court's construction of the term "barrier" as used by Mr. Kimura, Plaintiffs concede that Defendants' Taurus SC label instructs users to apply the product in a manner that falls within that construction of Mr. Kimura'a disclaimer is construed by this court.  (E.g., Pls.' Br. Opp'n Defs.' Modified Mot. Summ. J. (Doc. 195) at 10-11 ("While Plaintiffs respectfully disagree with this [court's] definition that a prior art 'barrier' exists on one side of the boundary, <u>Defendants' use of that prior art on the outside as part of their application</u> does not avoid the Kimura claims . . . ." (emphasis added)); Prelim. Inj. Hr'g Tr. (Doc. 149) at 90 (admission by Plaintiffs' expert, Dr. Michael F. Potter, that "the Taurus label . . . provide[s] instructions for providing a continuous barrier around the exterior of the building").)  Because Defendants'

8

Taurus SC label instructs users to apply the product without loopholes around a building and thus requires a treatment method that Mr. Kimura specifically disclaimed, this court concludes as a matter of law that the label does not infringe, or induce infringement of, the Kimura patents. See Free Motion Fitness, Inc., 423 F.3d at 1353; N. Telecom Ltd., 215 F.3d at 1296-97; RFID Tracker, Ltd., 342 F. App'x at 630-32.

Plaintiffs contend that "[t]he law is settled that the addition of elements or steps to an open-ended comprising claim is still an infringement." (Pls.' Br. Opp'n Defs.' Modified Mot. Summ. J. (Doc. 195) at 11.) This position does not give due consideration to the crucial distinction between elements that a patentee merely fails to claim and elements that the patentee specifically disclaims. Plaintiffs rely heavily on Gillette Co. v. Energizer Holdings, Inc. In that case, the objective of the patented invention at issue was "to reduce drag forces in safety razors with more than two blades." 405 F.3d at 1371. The accused infringing device was a safety razor with four blades. Id. at 1369. Primarily because the patent at issue made reference only to "a group of first, second, and third blades," the district court concluded that the patent covered only a three-bladed razor. Id. at 1369-70 (internal quotation marks omitted). The Federal Circuit vacated the district court's decision, id. at 1368, in large part because the patent claim at

9

issue was an open-ended "comprising" claim.  Id. at 1371 ("The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended.").

However, the Federal Circuit also acknowledged that a patentee can disavow claim scope through "words or expressions of manifest exclusion." Id. at 1374 (internal quotation marks omitted).  The court considered the possibility of a disclaimer and found that, "[d]espite the numerous cites to three-bladed razors plucked from the written description, no statement in the patent surrenders or excludes a four-bladed razor." Id.  In other words, the Federal Circuit found nothing to rebut the presumption that "[t]he addition of elements not recited in [an open-ended] claim cannot defeat infringement." See id. at 1372.

Unlike the patentee in Gillette Co., Mr. Kimura used words of manifest exclusion when he stated that an object of his invention "is to provide a termite treatment without barrier." (Compl. Ex. B (Doc. 1-3) at 3, col. 1, ll. 43-44 (emphasis added).)  In so doing, Mr. Kimura rebutted the presumption that the claims of his patents do not exclude, inter alia, applying insecticide without loopholes around a building. See Free Motion Fitness, Inc., 423 F.3d at 1353; N. Telecom Ltd., 215 F.3d at 1296-97; RFID Tracker, Ltd., 342 F. App'x at 630-32. (See also Markman Order (Doc. 183) at 19-20.)

10

The differences between Gillette Co. and the instant case do not end there. The Federal Circuit stated in Gillette Co. that "[t]he inventive contributions of the [patent at issue] are varying progressively the exposure and spacing parameters of the blades to overcome the undesired drag forces produced by razors with multiple blades, not simply limiting the number of blades to three." 405 F.3d at 1369. The court stated further that "[t]hese principles of progressive blade exposure and progressive blade span could apply equally to four or five blades." Id. at 1371. Meanwhile, among the stated objectives of the Kimura patents are the following: "to provide an improved process of protection of houses," "to protect the building with the minimum amount of insecticidally active ingredient," and "to have a good level of protection of buildings against termites while reducing the amount of applied insecticide." (Compl. Ex. B (Doc. 1-3) at 3, col. 1, ll. 18-19, 23-28.) Part of the inventive contribution of Mr. Kimura's patented loophole method is to improve on the prior art by limiting the amount of applied insecticide. This principle cannot apply equally to an insecticide application that fully incorporates what Mr. Kimura understood to be the prior art and then adds a loophole application on the other side of the outer walls of the building to be protected. Simply put, it is not possible to, in Mr. Kimura's words, "provide a termite

11

treatment without barrier," (id. at 3, col. 1, ll. 43-44), if the treatment utilizes what Mr. Kimura defined as a barrier.

Other Federal Circuit precedents likewise bear out the importance of the distinction between unclaimed elements and disclaimed elements. In Free Motion Fitness, Inc. v. Cybex International, Inc., the Federal Circuit began its analysis by stating that "[t]he addition of unclaimed elements does not typically defeat infringement when a patent uses an open transitional phrase such as 'comprising.'" 423 F.3d at 1347 (emphasis added). During prosecution of the patent at issue in that case, the patentee was required to distinguish its invention from a prior art patent that "discloses an exercise device wherein the axes of rotation of the adjustable arms are transverse to the axes of rotation of the pulleys." Id. at 1352. The patentee "overcame the rejection to the prior art . . . patent by amending the claims to include a 'rotating about an axis substantially parallel to the second axis' limitation" and by arguing that the transverse orientation of the pulley disclosed in the prior art was "undesirable." Id.

The Federal Circuit concluded that the plaintiff patentee was not "estopped to assert infringement by a device that—although including extension arms with axes of rotation substantially parallel to the pulleys—also has the undesirable

12

[transverse pulley orientation]." Id. at 1353. The court reasoned:

> The presence of an undesirable prior art feature in addition to the elements recited in the claim, even when the undesirability of that feature formed the basis of an amendment and argument overcoming a rejection during prosecution, does not limit the claim unless there is a clear and unmistakable disclaimer of claim scope.

Id. (emphasis added).

Unlike the patentee in Free Motion Fitness, Inc., Mr. Kimura did not merely distinguish his invention from the prior art barrier method or describe that method as undesirable. Rather, Mr. Kimura disavowed the barrier treatment method by describing his invention as "a termite treatment without barrier." (Compl. Ex. B (Doc. 1-3) at 3, col. 1, ll. 43-44.) Mr. Kimura's "clear and unmistakable disclaimer of claim scope" limits his claims such that a treatment method that incorporates a barrier, as defined by Mr. Kimura, must be found not to infringe the Kimura patents. See Free Motion Fitness, Inc., 423 F.3d at 1353.

Another noteworthy Federal Circuit case is Northern Telecom Ltd. v. Samsung Electronics Co., in which the defendants argued that the accused process was noninfringing because it included an element that was not claimed in the patent at issue. 215 F.3d at 1292. However, both the defendants and the Federal Circuit recognized that an accused infringer's addition of unclaimed elements to a claimed process "will not ordinarily prevent a

13

finding of infringement." Id. Thus, the issue before the court was not whether the asserted patent contemplated the presence of the unclaimed element, but whether the patent contemplated that element and specifically excluded it. Id. at 1292-93.

The Federal Circuit considered the patent's specification and prosecution history, as well as extrinsic evidence, and found that although the patent described the element in question as undesirable and did not explicitly claim that element, neither did the patent specifically state the exclusion of that element as a necessary part of the invention. Id. at 1293-96. The court thus concluded that the defendants' addition of the undesirable element to the plaintiff's patented process did not render the defendants' process noninfringing. Id. at 1296. In closing, the Federal Circuit stated:

> [I]f a patent requires A, and the accused device or process uses A and B, infringement will be avoided only if the patent's definition of A excludes the possibility of B. Statements simply noting a distinction between A and B are thus unhelpful: what matters is not that the patent describes A and B as different, but whether, according to the patent, A and B must be mutually exclusive.

Id. at 1296-97 (citations omitted).

Unlike the patentee in Northern Telecom Ltd., Mr. Kimura did not simply distinguish his patented method from the prior art barrier method and then fail to claim a barrier as an additional element of his invention. Rather, in describing his invention as "a termite treatment without barrier," (Compl. Ex. B (Doc. 1-3)

14

at 3, col. 1, ll. 43-44), Mr. Kimura declared that his method and the barrier method "must be mutually exclusive." See N. Telecom Ltd., 215 F.3d at 1297. Thus, a treatment method that incorporates a barrier, as defined by Mr. Kimura, must be found not to infringe the Kimura patents. See id. at 1296-97.

This court notes Plaintiffs' contention that summary judgment is unwarranted because "[t]he Court did not rule that Kimura disclaimed the combination of using (1) a prior art 'barrier' (as the Court construed 'barrier' . . . ) on one side of a building's boundary and (2) Kimura's inventive 'loopholes' . . . on the other side." (Pls.' Br. Opp'n Defs.' Modified Mot. Summ. J. (Doc. 195) at 9-10.) Plaintiffs cite no authority in support of the proposition that Mr. Kimura's disclaimer of barrier treatments does not also serve to disclaim the combination of a barrier treatment on one side of a building's boundary and Mr. Kimura's loopholes on the other side. Indeed, this court finds that the relevant case law is contrary to Plaintiffs' position. In Northern Telecom Ltd., the Federal Circuit indicated that a patentee's exclusion of a particular element from the invention is sufficient to disclaim not only the disavowed element, but also the combination of that element and the claimed invention. The court stated: "[I]f a patent requires A, and the accused device or process uses A and B, infringement will be avoided only if the patent's definition of A excludes the

15

possibility of B." 215 F.3d at 1296-97. See also, e.g., id. at 1294 (implying that intrinsic evidence "specifically stat[ing an element's] exclusion as part of the invention" is sufficient to disclaim the combination of that element and the claimed invention); id. at 1296 (implying that an inventor's statement that a claimed process "<u>must</u> exclude" an element is sufficient to disclaim the combination of that element and the claimed invention). This court finds that Mr. Kimura's description of his invention as "a termite treatment without barrier," (Compl. Ex. B (Doc. 1-3) at 3, col. 1, ll. 43-44), excludes barrier treatments from the invention and therefore disclaims not only barrier treatments, but also the combination of a barrier treatment and Mr. Kimura's loopholes.

The Kimura patents' use of the word "comprising" as a transitional phrase creates a presumption that the patents' claims are open-ended. However, Mr. Kimura specifically disclaimed the barrier method of insecticide application. This court therefore finds that Mr. Kimura rebutted the presumption that the claims of his patents do not exclude the prior art barrier method. It is undisputed that Defendants' accused Taurus SC label consistently requires users to apply Defendants' product in a manner that falls within Mr. Kimura's definition of "barrier." Thus, even assuming <u>arguendo</u> that Defendants' label also instructs users to practice the invention that is claimed in

16

the Kimura patents, this court concludes as a matter of law that Defendants' label does not infringe, or induce infringement of, the Kimura patents.

**IV. CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that Defendants' Modified Motion for Summary Judgment Based on Non-Infringement (Doc. 188) is **GRANTED** and Counts II and III of Plaintiffs' Complaint (Doc. 1) are **DISMISSED WITH PREJUDICE**. A judgment dismissing Counts II and III of Plaintiffs' Complaint with prejudice will be forthcoming.

This the 9th day of January 2012.

/s/ William L. Osteen, Jr.
United States District Judge